UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

WILLIAM M. GEORGE,
                                              **DECISION**
                              Plaintiff,              **and**
        v.                                    **ORDER**

CITY OF BUFFALO,                              **09-CV-2A(F)**
                              Defendant.

APPEARANCES:          DREW & DREW
                      Attorneys for Plaintiff
                      CAROLYN NUGENT GORCZYNSKI,
                      DEAN M. DREW, of Counsel
                      159 Linwood Avenue
                      Buffalo, New York   14209

                      DAVID RODRIGUEZ
                      ACTING CORPORATION COUNSEL, CITY OF BUFFALO
                      Attorney for Defendant
                      ROBERT E. QUINN,
                      Assistant Corporation Counsel, of Counsel
                      1100 City Hall
                      Buffalo, New York   14202

                      HODGSON, RUSS, LLP
                      Attorneys for Defendant
                      ADAM W. PERRY,
                      MICHAEL B. RISMAN,
                      BENJAMIN K. AHLSTROM, of Counsel
                      The Guaranty Building
                      140 Pearl Street, Suite 100
                      Buffalo, New York   14202

## JURISDICTION

        This case was referred to the undersigned for all pretrial matters by Order of

Hon. Richard J. Arcara dated September 14, 2010 (Doc. No. 31) and is presently

before the court on Plaintiff's motion for leave to amend the complaint, to amend the

Scheduling Order (Doc. No. 16), for additional time to conduct an oral deposition, and

to disqualify Defendant's counsel, filed August 27, 2010 (Doc. No. 20).

## BACKGROUND

On August 27, 2010, Plaintiff filed the instant motion (Doc. No. 20) ("Plaintiff's motion") requesting leave to file an amended complaint, to amend the Amended Scheduling Order filed on June 8, 2010 (Doc. No. 16), for additional time to exceed seven hours to complete an oral deposition pursuant to Fed.R.Civ.P. 30(d)(1), and to disqualify counsel to Defendant.  In support, Plaintiff filed on August 27, 2010, the Affidavit of Carolyn Nugent Gorczynski, Esq. (Doc. No. 21) ("Gorczynski Affidavit"), along with Exhibits A - V ("Plaintiff's Exh.(s) ___"), the Affidavit of William M. George (Doc. No. 23) ("George Affidavit"), and, on August 31, 2010, a Memorandum of Law in Support of Plaintiff's motion (Doc. No. 28) ("Plaintiff's Memorandum").

On October 8, 2010, Defendant filed its Cross-Motion for Sanctions pursuant to Fed.R.Civ.P. 11 (Doc. No. 33) ("Defendant's cross-motion") along with its Memorandum of Law in Opposition to Plaintiff's Motion for Leave to Amend, Disqualify Counsel, and Additional Deposition Time and in Support of Cross Motion for Sanctions (Doc. No. 33) ("Defendant's Memorandum"), the Declaration of Michael B. Risman, Esq. (Doc. No. 34) ("Risman Declaration") along with Exhibits A - B ("Defendant's Exh.(s) ___").

On October 22, 2010, Plaintiff filed the Reply Affidavit of Carolyn Nugent Gorczynski, Esq. in further support of Plaintiff's motion ("Gorczysnki Reply Affidavit") attaching Exhibits 1 - 5 ("Plaintiff's Reply Exh.(s) ___"), and a Reply Memorandum of Law (Doc. No. 38) ("Plaintiff's Reply").  On the same day, Plaintiff also filed the Response Affidavit of Carolyn Nugent Gorczynski, Esq. in Opposition to Defendant's

Cross-Motion for Attorneys Fees, Costs and Sanctions (Doc. No. 40) ("Gorczynski Response Affidavit") together with Exhibits 1 -5 ("Plaintiff's Response Exh.(s) ___"),[1] and a Response Memorandum of Law in Opposition to Defendant City of Buffalo's Cross-Motion for Costs, Attorneys Fees and Appropriate Sanctions ("Plaintiff's Response").  On October 28, 2010, Defendant filed its Reply Memorandum of Law in Further Support of the City's Cross-Motion for Sanctions (Doc. No. 44) ("Defendant's Reply").  Oral argument on Plaintiff's motion and Defendant's cross-motion was conducted on November 22, 2010 (Doc. No. 46).  At oral argument, Defendant withdrew Defendant's cross-motion for sanctions (Doc. No.  46).

With the court's permission, on November 29, 2010, Plaintiff filed a Supplemental Memorandum of Law (Doc. No. 47) ("Plaintiff's Supplemental Memorandum") and the Affidavit of Dean M. Drew, Esq. attaching Exhibits A - G (Doc. No. 49) ("Plaintiff's Supplemental Exh.(s) ___").  On December 2, 2010, Defendant filed a Memorandum of Law in Response to Plaintiff's Supplemental Memorandum of Law (Doc. No. 51) ("Defendant's Supplemental Memorandum").  Further oral argument was deemed unnecessary.

### FACTS[2]

Plaintiff alleges age discrimination based on Defendant's failure to promote Plaintiff to the permanent civil service position of Laborer II, specifically as a lifter in

---

[1]  Plaintiff's Reply Exhibits 1-5 and Plaintiffs' Response Exhibits 1-5 are identical.

[2]  Taken from the pleadings and papers filed in connection with this action, Plaintiff's motion, and Defendant's cross-motion.

Defendant's Department of Public Works, Parks and Streets ("the Department"), in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et. seq.* ("ADEA").  Complaint ¶¶ 28, 31 ("Plaintiff's First Claim").  Plaintiff also asserts a similar claim under New York Executive Law § 296 ("Plaintiff's Second Claim").  In particular, Plaintiff alleges he has, since March 2001, worked for Defendant in the Department, specifically Streets Division, as a seasonal (garbage collection) lifter, Laborer II, Complaint ¶ 14, a non-competitive position under the New York State Civil Service System.  Plaintiff's Exh. F at 3 (Defendant's Answer to Plaintiff's First Set of Interrogatories Nos. 6-10) (a Laborer II position "is a non-competitive civil service position" – "vacant positions in the non-competitive classification [need not] be posted.").  According to Plaintiff, he has performed satisfactorily in this position but has not been promoted to a permanent Laborer II position by Defendant because of his age.  Complaint ¶¶ 14-17.  Plaintiff claims that Defendant has informed him that a "merit system" for appointments and promotions is maintained by Defendant under which Plaintiff would be considered for promotion to a permanent position that would entitle Plaintiff to better compensation and, importantly, benefits.  Complaint ¶¶ 19-23. Plaintiff alleges that despite assurances of promotion and commendations of Plaintiff's performance by his supervisors, Plaintiff has not been considered for nor received such promotion, and that younger similarly situated employees have been appointed or promoted to the permanent Laborer II positions which become open, but are not posted to enable Plaintiff to formally apply for promotion.  Complaint ¶¶ 21-25, 28.  Despite these allegations, Plaintiff believed at the time this suit was commenced, but was without evidence to support such belief, that Defendant refused to promote Plaintiff

4

because of Plaintiff's lack of political support for the present Mayor of Buffalo, Byron W. Brown.  George Affidavit ¶¶ 5-7.  Plaintiff also declined to change Plaintiff's political party affiliation as suggested in an off-duty conversation, by Defendant's Deputy Public Works, Parks and Streets Commissioner, Paul Sullivan ("Sullivan"), during Mayor Brown's fall 2009 reelection campaign.  *Id.* ¶ 8.

In his proposed amended complaint, Plaintiff's Reply Exh. 5, Plaintiff seeks to add a Third Claim for Relief based on Plaintiff's allegations that despite Plaintiff's satisfactory service since his initial appointment in 2001 as a seasonal (without benefits) Laborer II employee, Plaintiff has been unable to secure promotion to a permanent Laborer II employee because Plaintiff failed to change his political party affiliation, Plaintiff's Reply Exh. 5 ¶¶ 32-33, 35, and actively support Mayor Brown's election campaign.  *Id.* ¶¶ 15, 23, 24-25.  According to Plaintiff, in the previous city administration such appointments and promotions were upon a non-political merit-based system, *id.* ¶ 28, but that under the present mayoral administration such appointments are given to younger persons "who have provided political support to Mayor Brown."  *Id.* ¶ 29.  Plaintiff also alleges that openings for permanent Laborer II positions are not posted, to enable Plaintiff to make formal application, and are filled by Defendant as openings occur.  *Id.* ¶ 30.

Pursuant to the Scheduling Order filed July 23, 2009 (Doc. No. 11), Plaintiff participated in the court's ADR program and continued settlement discussions for several months when, after mediation proved unfruitful, Plaintiff served on January 19, and February 1, 2010 his First Set of Interrogatories ("Plaintiff's Interrogatories") and Document Requests ("Plaintiff's Document Requests") on Defendant.  Gorczynski

5

Affidavit ¶¶ 8-11.  The Scheduling Order required motions to amend be filed not later than August 31, 2009; an Amended Scheduling Order, filed June 8, 2010, (Doc. No. 16), required discovery be concluded by December 31, 2010, but did not include additional time for moving to amend.

Plaintiff's Interrogatories 9, 10 and 12, served January 19, 2010, requested information regarding Defendant's procedure for selecting persons for appointment to the permanent Laborer II position in the Department, including protections against bias employed by Defendant in the selection process.  Gorczynski Affidavit ¶ 15.  On February 19, 2010, Defendant answered Plaintiff's Interrogatories 9, 10 and 12 by stating that Defendant had no contractual obligation to post openings for non-competitive positions including the permanent Laborer II positions at issue in this case, and that such positions were filled by persons recommended by the Defendant's Mayor's office.  Plaintiff's Exh. F at 3-4.  Defendant's answers to Plaintiff's Interrogatories were sworn to by Charles A. Masi, Administrator for Defendant's Department of Public Works, Parks and Streets, with 32 years of experience, ("Masi"). *Id.* at 3, 6.  Despite Plaintiff's repeated requests, Defendant declined to provide more detailed answers to Plaintiff's Interrogatories 9, 10 and 12 or to identify fact witnesses for deposition.  Gorczynski Affidavit ¶¶ 20-21; Gorczynski Response Affidavit ¶¶ 51-54; 65.  In its supplemental answers to Plaintiff's interrogatories, Defendant designated Olivia Licata ("Licata"), a director in Defendant's Human Resources Department, and Steven Stepniak ("Stepniak"), Commissioner of the Department as its Rule 30(b)(6) representatives; however, upon conducting these depositions, it became apparent that neither Licata nor Stepniak were suitable Rule 30(b)(6) witnesses.  Gorczynski Reply

Affidavit ¶¶ 31-34.

Following Defendant's belated agreement to produce Masi, Plaintiff's Response
Exh. 4 at 16, Plaintiff conducted Masi's oral deposition on June 9, 2010.  Gorczynski
Affidavit at 24.  In response to Plaintiff's questions asked as to how Defendant filled
Laborer II positions in the Department, Masi explained that he was not involved in the
process by which individuals were selected for appointment to Laborer II permanent
positions in the Department and, after conferring with Assistant Corporation Counsel,
Robert E. Quinn ("Quinn"), who appeared for Defendant at Masi's deposition, declined
to answer Plaintiff's question seeking to ascertain whether such appointments were the
result of politically motivated recommendations made by the Mayor's office, Gorczynski
Affidavit ¶¶ 28-32.  Specifically, in response to Plaintiff's question at the deposition
regarding Masi's knowledge and involvement with appointment of persons not
recommended by the Mayor's office, Masi stated his reluctance to answer because of
his fear of possible "self-incrimination" and "retaliation."  Plaintiff's Exh. M at 102-03.
Masi similarly declined to answer Plaintiff's questions as to why the Mayor's office
appoints persons to positions in the Department's Streets Division.  _Id._ at 106-07.
Following Masi's consultation with Quinn, which according to Plaintiff was for the
purpose of considering whether Masi should continue to refuse to answer Plaintiff's
questions on Fifth Amendment self-incrimination grounds, Gorczynski Affidavit ¶¶ 32-
33, Masi testified that it was his opinion that some city employees believe such
candidates for Laborer II appointments were selected by the Mayor's office for political
reasons.  _Id._ ¶ 34; Plaintiff's Exh. M at 109.  Masi's deposition was terminated,
Plaintiff's Exh. M at 127, before Plaintiff's attorney completed his questioning of Masi,

Gorczynski Affidavit ¶ 35, and has not been rescheduled because Plaintiff asserted

Quinn's consultation with Masi and continued representation of Defendant has created

a disqualifying conflict of interest.  *Id.* ¶¶ 36-37.  Masi's deposition was conducted for

approximately 3.5 hours before it was adjourned at 3:00 p.m. because of Masi's

required appearance elsewhere at that time.  *Id.* ¶¶ 81-82.

Thereafter, on June 12, 2010, Plaintiff was notified that Hodgson Russ, LLP

("Hodgson Russ")  would appear as Defendant's attorney, Gorczynski Affidavit ¶ 38,

and was subsequently informed that one of its members, Michael B. Risman

("Risman"), had interviewed Masi regarding Masi's deposition and his assertions of any

Fifth Amendment grounds to decline answering Plaintiff's questions concerning filling of

promotional vacancies for permanent Laborer II positions in the Department and the

involvement of the Mayor's office in such appointments.  *Id.* ¶ 51.  On July 13, 2010,

Risman advised Plaintiff that he perceived no reason that the Defendant's Corporation

Counsel's office, based on Quinn's representation of Defendant and his consultation

with Masi at the deposition, would be required to withdraw based on a disqualifying

conflict of interest arising from Masi's expressed desire to assert a Fifth Amendment

self-incrimination privilege and fear of possible retaliation in response to Plaintiff's

further deposition questioning of Masi.  *Id.* ¶¶ 50-51.  On July 28, 2010, Risman

indicated to Plaintiff that as Masi had retired from Defendant's employment,

Defendant's Corporation Counsel's Office could continue to represent Defendant

without any disqualifying conflict and would do so.  *Id.* ¶ 54.  Plaintiff disagreed with

Risman's opinion and in response stated that based on Risman's conversations with

Masi, Risman and by imputation Hodgson Russ were also disqualified from

representing Defendant. *Id.* ¶ *55.*   Risman agreed to reschedule the completion of

Masi's deposition but refused to agree to enlarge the time limit imposed by Fed.R.Civ.P.

30(d)(1) (limit of one-day of 7 hours unless otherwise stipulated or as provided by court

order). *Id.* ¶ 58.  According to Plaintiff, Plaintiff did not, prior to filing the Complaint,

advise his attorneys of his belief that his failure to obtain a permanent Laborer II

position resulted from political preferences of candidates by the Mayor's office,

sufficient to predicate a claim for violation of Plaintiff's First Amendment rights, but that

as a result of information Plaintiff received during the Mayor's fall 2009 reelection

campaign and Masi's deposition testimony, Plaintiff believes he now has such ground.

Gorczynski Affidavit ¶¶ 59-61.

        Plaintiff contends that because conversations occurred between Masi and

Hodgson Russ attorneys regarding Masi's assertions of a Fifth Amendment privilege

and fear of retaliation by the Defendant's Mayor's office on account of his answers to

Plaintiff's deposition questions, both Defendant's Corporation Counsel's office and

Hodgson Russ should be required to withdraw because of an actual conflict of interest.

Gorczynski Affidavit ¶¶ 78-79.  Plaintiff also requests additional time to complete Masi's

deposition beyond the remaining 3 ½ hours, a modification of the Scheduling Order on

the ground that discovery could not be completed after the issue of potential

disqualification of Defendant's attorneys was presented, *id.* ¶¶ 80-85, 86-87, and

permission to file an amended complaint to add a First Amendment claim based on

improper political hiring requirements for the permanent Laborer II position.  *Id.* ¶¶ 59-

70.

**DISCUSSION**

Plaintiff, pursuant to Fed.R.Civ.P. 15(a), seeks permission to file an amended complaint.  Plaintiff's Memorandum at 1.  Specifically, Plaintiff contends that although motions to amend under the first Scheduling Order were required by August 31, 2009 (Doc. No. 11, ¶ 5), good cause to amend the Scheduling Order to permit Plaintiff's motion, filed August 17, 2010, arose later because Plaintiff through no lack of reasonable diligence belatedly learned of the existence of facts, particularly advice from Sullivan received during the fall of 2009 and as reinforced by Masi's deposition testimony in June 2010, corroborating Plaintiff's earlier suspicions that an additional reason for Defendant's failure to promote Plaintiff to a Laborer II permanent position in the Department was Plaintiff's lack of a preferred – Democrat – political affiliation and active support for the Mayor's reelection campaign as a policy and practice.  Plaintiff's Memorandum at 6-8.  According to Plaintiff's Proposed Amended Complaint, Plaintiff was advised by his supervisors during the fall 2009 mayoral campaign Plaintiff should support Mayor Brown's reelection candidacy by attending political fundraisers for the Mayor and donating to the Mayor's campaign.  Plaintiff's Exh. A ¶ 34.  As a result, Plaintiff seeks to allege as a new Third Claim for Relief that Plaintiff's refusal to do so resulted in Defendant's refusal to promote Plaintiff to Laborer II, a non-policy-making position in the Department, based on political patronage considerations in addition to Defendant's discriminatory preference for younger appointees who politically support the Mayor.  *Id.* ¶¶ 35-37.

In opposition, Defendant argues Plaintiff's proposed Third Claim is untimely, dilatory, prejudicial to Defendant, and futile.  Defendant's Memorandum at 6.

Specifically, Defendant argues that Plaintiff's proposed Third Claim unfairly expands the scope of this litigation, Defendant's Memorandum at 6, and that Plaintiff's proposed First Amendment political hiring claim and request for punitive damages are futile as Plaintiff has failed to allege sufficient facts to support such claims, and punitive damages may not be awarded against a municipality, such as Defendant, in a Section 1983 action.  Defendant's Memorandum at 9-15.  Defendant also argues Plaintiff's disqualification request is baseless in that Masi's initial reluctance to testify did not prevent his further testimony in response to Plaintiff's questions, that the facts do not present grounds for disqualification under the New York Rules of Professional Responsibility 1.7, 1.10 and 1.13, that Masi's subsequent retirement removes any reason upon which Masi could conceivably fear retaliation by Defendant should his further testimony be adverse to Defendant, thus creating an actual conflict of representation for Defendant's attorneys, and that Masi has indicated his willingness to allow Hodgson Russ to represent him at any further deposition.  Risman Declaration ¶¶ 9-10, 13, 17-20.

In reply, Plaintiff states that because of Defendant's failure to correctly identify a Fed.R.Civ.P. 30(b)(6) deposition witness able to provide responsive testimony, Gorczynski Reply Affidavit ¶¶ 29-34, significant time was lost before Defendant designated Masi as the person with sufficient knowledge of Defendant's hiring practices concerning Laborer positions in Defendant's Street Sanitation Division.  *Id.* ¶¶ 35-37. As noted, Facts, *supra*, at 6, Defendant had initially designated Licata and Stepniak as Defendant's Rule 30(b)(6) witnesses but their depositions demonstrated this designation was incorrect.  Gorczynski Response Affidavit ¶¶ 34-36.  As Plaintiff notes,

two additional Rule 30(b)(6) witnesses ostensibly with sufficient knowledge of this important fact question designated by Defendant have not been scheduled for deposition because of the pendency of Plaintiff's disqualification motion.  Gorczynski Reply ¶ 37.  Contrary to Defendant's designation of Masi as a Rule 30(b)(6) witness, *id.* ¶ 58, Defendant now contends, inconsistently, Masi had "no relevant knowledge." Defendant's Memorandum at 4.

Also, contrary to Defendant's assertion, *id.* at 8, Plaintiff maintains that Defendant has not engaged in extensive discovery activity in this case.  Plaintiff's Reply Memorandum at 3; Gorczynski Reply Affidavit ¶ 51 (Defendant, as of March 30, 2010, had not served amended responses to Plaintiff's interrogatories nor provided document production requested by Plaintiff); ¶ 63 (demonstrating Plaintiff's unsuccessful efforts as of June 2010 to persuade Defendant to cooperate with Plaintiff's discovery demands). The record does not reveal the extent, if any, Defendant has served discovery requests or attempted to conduct depositions including Plaintiff's.  Plaintiff's Response at 11 ("Defendant has only recently sent out discovery demands.  It has not taken any depositions.").  Plaintiff has conceded punitive damages are not available against Defendant and has submitted a further proposed Amended Complaint consistent with that concession thus mooting that part of Defendant's argument against Plaintiff's request to amend as futile.  Gorczysnki Reply Affidavit ¶ 65.  Such request has been deleted from Plaintiff's Proposed Amended Complaint.  Plaintiff's Reply Exh. 5 at 9.

Plaintiff also contends that because Masi's deposition testimony demonstrates his assumedly truthful testimony will be adverse to Defendant there was a reasonable basis to infer that Masi could fear potential retaliation by Defendant and that Masi's

retirement, apparently unanticipated, following shortly after his June 2010 deposition

supports that such fear existed at the time of Masi's deposition thus creating an interest

adverse to Defendant based on Masi's deposition testimony requiring disqualification

from further representation of Defendant by both the Defendant's Corporation

Counsel's office and its newly retain counsel, Hodgson Russ.  Plaintiff's Reply

Memorandum at 6-7 (citing Rules 1.7, 1.10 and 1.13 of the Rules of Professional

Conduct, 22 N.Y.C.R.R. Part 1200) ("the Rules of Professional Conduct").  Plaintiff also

argues that in order to waive the conflict, as suggested by Risman, Masi was required

to consent by an affidavit and not through counsel's representation citing *Mercado v.*

*City of New York*, 2010 WL 3910594, *8 (S.D.N.Y.  Sep't. 30, 2010) (requiring affidavit

by concurrently represented persons confirming advice of potential conflict legal effects,

including waiver of individual defenses in favor of joint defense strategy, and consent to

joint representation).  Plaintiff's Response at 6.   Finally, Plaintiff maintains Masi's

retirement does not avoid the disqualifying conflict between Masi and Defendant, based

on Masi's expressed fear of possible retaliation and his desire to assert a self-

incrimination privilege, as the conflicting interests between Masi and Defendant will

continue to adversely impair Plaintiff's ability to examine Masi regarding his knowledge

of Defendant's hiring practices for Laborer II positions in Defendant's Streets Division.

Plaintiff's Response at 7.


**A.**     **Plaintiff's Motion to Amend.**

Where a party seeks, pursuant to Fed.R.Civ.P. 15(a), leave to serve an

amended pleading past the cut-off date for such motion established by a scheduling

order entered under Fed.R.Civ.P. 16(b), good cause must be shown.  *Parker v. Columbia Pictures Industries,* 204 F.3d 326, 340 (2d Cir. 2000) (citing cases, including *Carnrite v. Granada Hospital Group, Inc.*, 175 F.R.D. 439, 446 (W.D.N.Y. 1997)).  Good cause exists where the moving party is unable to comply with a required deadline despite the exercise of due diligence.  *Parker*, 204 F.3d at 340.  Here, the case management order entered on July 23, 2009 (Doc. No. 11), required motions to amend be filed not later than August 31, 2009 (Doc. No. 11, ¶ 5).  The stipulated Amended Scheduling Order filed June 8, 2010, did not enlarge the period for motions to amend. Plaintiff concedes that an off-duty conversation during the 2009 mayoral campaign with Paul Sullivan, the Department's Deputy Commissioner and the head of Defendant's Streets Sanitation Division, informed Plaintiff that to obtain promotion to the Laborer II position, the subject of the instant lawsuit commenced January 5, 2009, Plaintiff "should change [his] political [party] affiliation" to Democrat.  George Affidavit ¶ 8 (bracketed material added).  Further, several of Plaintiff's supervisors also informed Plaintiff during the same period that in order for Plaintiff to be promoted, Plaintiff needed to provide political support to Mayor Brown's reelection campaign.  *Id*. ¶ 7.  Despite receiving this information, Plaintiff, who was represented by counsel, failed to provide this information to his attorneys because he "did not understand the [legal] significance of these statements."  *Id.* ¶ 10 (bracketed material added).  According to Plaintiff, he therefore did not mention these statements indicating that promotions to Laborer II positions within the Department were subject to political considerations until Spring 2010, prior to the Masi deposition that commenced on June 9, 2010 during which Masi testified that political consideration could have influenced Laborer II hiring recommendations by the

Mayor's office.  *Id.* ¶ 11.

Plaintiff's First Set of Interrogatories were not served until January 19, 2010,

because Plaintiff and Defendant's attorney agreed to defer initiating discovery while the

parties engaged in mediation as directed by the Scheduling Order, Drew Affidavit ¶¶ 13,

16; and Plaintiff's First Set of Document Production Requests were served on February

1, 2010.  *Id.* ¶ 17.  Defendant's answers to Plaintiff's Interrogatories, signed by Masi,

were served on March 1, 2010, in accordance with extensions agreed to by Plaintiff at

Defendant's request.  *Id.* ¶ 20.  Plaintiff's notice of Defendant's deposition pursuant to

Fed.R.Civ.P. 30(b)(6) ("the Rule 30(b)(6) deposition") scheduling such deposition for

April 6, 2010, was served on February 23, 2010.  *Id.* ¶¶ 18, 23.  Defendant served its

responses to Plaintiff's Document Requests on March 26, 2010.  *Id.* ¶ 25.  Plaintiff

objected to Defendant's answers for lack of clarity and incompleteness, including, as

relevant, Defendant's answers to Plaintiff's Interrogatories Nos. 9, 10, and 12 which

specifically requested Defendant provide a detailed description of the process by which

candidates for hiring or promotion to Laborer II positions were considered, information

concerning how Defendant avoided possible illegal "bias or discriminatory action" on the

hiring or promotional process, and relevant compensation information and job

descriptions.  Plaintiff's Exh. E.  Defendant delayed, at the request of Defendant's

attorney, serving amended answers responsive to Plaintiff's objections until April 21,

2010, and requested that the Rule 30(b)(6) deposition be adjourned to May, 2001,

Drew Affidavit ¶¶ 21, 26, based on the fact that Defendant was required to assign a

new attorney, Quinn, to handle the matter on Defendant's behalf.  *Id.* ¶ 27.

In Defendant's original answers to Plaintiff's Interrogatories Nos. 9, 10 and 12,

Defendant stated in substance that because Laborer II positions were non-competitive positions within the state civil service system they are not subject to any labor contract requirements, it was customary for the Mayor's office to recommend individuals for hiring and to communicate such recommendations to the Public Works Department "for processing," *i.e.*, hiring.  Plaintiff's Exh. F at 3-4.  Masi, who provided Defendant's answers, also averred that he lacked knowledge of the selection process used by the Mayor's office with respect to the Laborer II positions.  In response to Plaintiff's Interrogatory No. 2 which requested the identity of persons with knowledge of the "facts and circumstances" regarding Plaintiff's allegations, Defendant also provided the names of Masi, Stepniak, Leonardo Sette-Camara, an Assistant Corporation Counsel, Byron W. Brown, Mayor, and Karla Thomas, Defendant's Commissioner of Human Resources, Plaintiff's Exh. F at 1-2.  Defendant's Amended Answers, which were provided by letter dated April 21, 2010, stated that Licata and Stepniak would serve as Defendant's representatives at the Rule 30(b)(6) deposition then scheduled for May 5-6, 2020.  Plaintiff's Exh. F at 7.  Although Masi was the person who signed Defendant's interrogatories and was listed as a fact witness, Masi was not designated at that time as one of Defendant's Rule 30(b)(6) representatives.  *Id.*

Additionally, Defendant supplemented its answers on April 21, 2010, Drew Affidavit ¶ 28, to Plaintiff's Interrogatories Nos. 9, 10 and 12 by statements, over the signature of Quinn, Defendant's new attorney, that, contrary to Masi's answers, Plaintiff's Exh. F at 3-4, seasonal Laborer II positions in the Department were not subject to any "municipal policies, rules and/or procedures . . . [applicable] to the appointment process," that a "formal selection process does not exist," and that

16

Defendant was unable to identify individuals who participated in the selection process for the past eight years, as Plaintiff had requested, because of the 'time, scope, number of individuals [who participated], along with the realities of municipal administration." Plaintiff's Exh. K at 9 (underlining and bracketed material added).

Plaintiff conducted the deposition of Licata and Stepniak on May 5-6, 2010 as scheduled, Drew Affidavit ¶¶ 30-31. However, as these witnesses were unable to provide relevant information as to the "majority of areas" for inquiry designated by Plaintiff in his Rule 30(b)(6) deposition notices, id. ¶ 33, Plaintiff demanded, and Defendant, after initially opposing Plaintiff's request, allowed Plaintiff to depose Masi on June 9, 2010. Id. ¶¶ 34-35. Two other fact witnesses, Ms. Healey-Barker and Ms. Bobinchek, a representative of the Mayor's office, have not been deposed pending disposition of Plaintiff's motion. Gorczynski Opposition Affidavit ¶ 39.

As noted, Defendant maintains Plaintiff failed to exercise due diligence in proposing a claim of politically influenced municipal hiring nearly a year after the deadline of August 31, 2009 established by the Scheduling Order and thus is unable to show good cause to amend the Scheduling Order at this time. However, Defendant's argument overlooks the undisputed facts which reveal, first, that as of the August 31, 2009 deadline, Plaintiff lacked any evidence upon which to assert in good faith, as required by Fed.R.Civ.P. 11(b), that Plaintiff had a plausible ground for such a claim as required by Ashcroft v. Iqbal, ____ U.S. ___, 129 S.Ct. 1937, 1949 (2009), to support a request to file an amended complaint. See Lenox v. Town of North Branford, 2009 WL 1099118, at *2 (Apr. 23, 2009) (dismissing complaint for failing to allege facts rendering claims plausible, but affording plaintiff "opportunity to replead if he can allege in good

faith the requisite factual basis for his . . . claim.") *See also Assoko v. City of New York*,
539 F.Supp.2d 728, 742 (S.D.N.Y. 2008) (granting plaintiffs leave to file amended
complaint, providing they could, in good faith, correct deficiencies in claims asserted in
original complaint); and *Seabrook v. City of New York*, 509 F.Supp.2d 393, 407
(S.D.N.Y. 2007) (same).  Other than Plaintiff's admission that when the complaint was
filed in December 2008, Plaintiff suspected he was "passed up for appointment to a
permanent Laborer II position . . . because [he] refused to provide political support for
the current administration," George Affidavit ¶ 5, there is no indication in the record
(Plaintiff "had no evidence to support [his] belief") that Defendant's failure to promote
Plaintiff was "politically motivated," George Affidavit ¶ 6), and Defendant points to none,
upon which Plaintiff could in good faith have asserted a plausible basis that Defendant's
failure to promote Plaintiff was based on political considerations.  *Iqbal*, 129 S.Ct. at
1949-50 (a complaint must contain sufficient factual allegation to state a claim for relief
that is plausible (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (the
factual allegations "must be enough to raise a right to relief above the speculative level
on the assumption that all the allegations in the complaint are true")).  In order to prevail
on such a claim a plaintiff must establish that he was denied employment, promotion, or
transfer to a non-policy making government position based on the plaintiff's political
affiliation.  *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 74-70 (1990); *Rini v. Zwirn*,
886 F.Supp. 270, 279-80 (E.D.N.Y. 1995) (plaintiffs, including incumbent appointees in
town's Laborer I and II positions, pleaded valid cause of action for political discharge
based on allegations that defendants' budget policies sought to force plaintiffs to
change political affiliations to retain jobs).  Granted, Plaintiff could have factually alleged

he was a qualified candidate and the position, garbage collector, was a non-policy one but because Plaintiff's mere suspicion would have failed to state a plausible claim under *Rutan*, according to Defendant's argument the proposed amended claim is futile even now because it fails to meet the plausibility test to state a claim.

Thus, the first time in the scenario after August 31, 2009, that Plaintiff conceivably became possessed of relevant information is the unspecified dates during the fall 2009 time period, prior to the Buffalo mayoral election on November 3, 2009, when Sullivan and other unnamed co-employees and supervisors in the Department informed Plaintiff he should change his non-affiliation voter registration to Democrat and actively support the Mayor's reelection bid.  Again, however, as Defendant itself points out, because this information did not emanate from the Mayor or any person within the Mayor's office, Sullivan's advice, even if accurate, would not provide the good-faith plausible basis for Plaintiff's belated First Amendment claim.  Defendant points to nothing during the mediation process that was revealed to Plaintiff and his attorneys that should reasonably have prompted a motion to amend the Scheduling Order to enlarge the time for seeking leave to add a new claim that Defendant's failure to promote Plaintiff constituted a First Amendment violation.  Thus, the question is when in the period between the initiation of the formal discovery in January 2010, deferred by the parties to accommodate possible settlement through mediation, and August 27, 2010, did Plaintiff become possessed of any information which should reasonably have required Plaintiff to move to amend prior to August 27, 2010 such that any delay in doing so thereafter evidenced a lack of diligence.  A careful review of the record demonstrates such awareness did not accrue to Plaintiff until Masi's deposition in early

June 2010.

Plaintiff's interrogatories, served on January 19, 2010, requested the identity of witnesses having knowledge of Plaintiff's hiring and lack of promotion to a Laborer II position, but neither Stepniak nor Licata were able to provide such information at their May 5-6, 2010 depositions despite having been designated as Defendant's Rule 30(b)(6) witness, postponed at Defendant's request.  Although Masi was the author of Defendant's answers to Plaintiff's interrogatories, Defendant resisted designating Masi as its Rule 30(b)(6) representative in substitution for the failed depositions of Stepniak and Licata, and delayed Masi's deposition until early June 2010, which was not completed because of Masi's expressed inability to testify as to the actual procedures used by the Mayor's office in selecting persons for hiring or promotion to Laborer II positions and a scheduling conflict.  Moreover, despite Plaintiff's Interrogatories Nos. 9, 10, and 12 requesting detailed explanations regarding the selection and hiring of persons for Laborer II positions, Defendant's answers stated that it was the "custom of the Mayor's office" to designate such persons to the Department which would in turn "process," presumably hire, the individuals so designated.  Defendant's Answers to Plaintiff's Interrogatories Nos. 9, 10 and 12, Plaintiff's Exh. F at 3-4.  Further, Defendant stated that notwithstanding its designation of Masi as the individual with knowledge to provide answers, Masi averred he lacked knowledge as to how the Mayor's office under the Brown administration made such designation or failed to make such designation in the case of Plaintiff.  Plaintiff objected to this answer by letter March 8, 2010, and demanded that an answer be provided by "an individual in the Mayor's office who is privy to the selection process."  Plaintiff's Exh. H at 3-4.  It was not until April 21, 2010,

however, that Defendant attempted to supplement its interrogatory answers in response to Plaintiff's objection.  Plaintiff's Exh. K.  Masi, who answered Plaintiff's Interrogatories Nos. 9, 10, and 12 regarding the selection procedures and stated his own lack of first-hand knowledge as to these customs, practices and procedures, nevertheless represented to Plaintiff that Licata and Stepniak would serve as Defendant's Rule 30(b)(6) representatives at the May 5-6, 2010 depositions.  *Id.* at 1.  Further, despite his proffered lack of knowledge as to these matters, Defendant allowed Masi to be deposed as a Rule 30(b)(6) witness in addition to Licata, a personnel official and Stepniak, the Department Commissioner.  Thus, as of April 21, 2010, Plaintiff's discovery actions and pursuit of satisfactory responses from Defendant reveal no lack of diligence.

As to Plaintiff's interrogatories calling for details regarding the hiring policies of the Mayor's office, Quinn, who as an attorney who was recently assigned to the case could not plausibly possess such knowledge or, for that matter, be in any "privity" with the Mayor's office with respect to the hiring of laborers in the Defendant's Streets Division, supplemented Masi's vague answers stating that no regulations or formal procedures covered hiring of seasonal Laborer II positions.  Plaintiff's Exh. K at 3.  However, as the position at issue is a permanent, not seasonal, Laborer II position, such supplemental answer was unresponsive.  Moreover, the remainder of Quinn's answer, purporting to answer Plaintiff's request for particularization of the procedures used to hire and promote permanent Laborer II employees for the Department, was equally unresponsive.  Specifically, Quinn's answer stated that because of the "realities of municipal administration," it was not possible to identify persons with "input into the

hiring of Laborer II permanent positions during the relevant period." *Id.* (underling

added).  Notwithstanding this representation, Quinn also represented, surprisingly, that

Masi was "the individual agent of the City of Buffalo best able to answer [Plaintiff's]

interrogatories numbers '9,' '10,' and '12,'" seeking details as to the hiring process for

these positions, despite Masi's specific denial of knowledge in his answers to these

interrogatories.  *Id.;* Plaintiff's Exh. F at 3-4 ("I do not know nor am I privileged [*sic*] to

that [Mayor's office] selection process.") (bracketed material added).  Thus, as of April

21, 2010, nearly 90 days after Plaintiff commenced formal discovery, Defendant

repeatedly failed to provide answers to Plaintiff's interrogatories seeking information

either negating any possible claim of alleged political influence in the hiring process as

to Laborer II permanent (or seasonal) positions, or providing any facts from which such

influence could be inferred by Plaintiff.

Additionally, Defendant's conflicting assertions as to the identity of a

knowledgeable person to answer the subject interrogatories or who could serve as a

productive Rule 30(b)(6) witnesses further impeded Plaintiff's ability to discover the

existence of such facts through depositions until at the earliest, Masi's incomplete

deposition on June 9, 2010.  While Plaintiff, could have moved to compel more

responsive answers upon receiving Defendant's deficient supplementary answers on

April 21, 2009, given that Defendant's first Rule 30(b)(6) deposition of two persons

specifically designated by Defendant as knowledgeable representatives of Defendant

scheduled for May 5-6, 2010, approximately two-weeks hence, Plaintiff should not be

faulted for expecting that the obvious deficiencies in Defendant's answers to Plaintiff's

Interrogatories Nos. 9, 10, and 12  would be overcome by such deposition.  Of course,

any such expectations by Plaintiff were misplaced as neither Licata nor Stepniak proved

to be sufficiently knowledgeable requiring Defendant's redesignation of a

knowledgeable Rule 30(b)(6) witness or witnesses.  Gorczynski Response Affidavit ¶¶

33-36.  In order to overcome these obvious short-comings in Defendant's required

discovery obligations Plaintiff was compelled to negotiate with Defendant's counsel to

agree to schedule Masi's deposition for June 9, 2010.  Gorczynski Affidavit ¶ 37.  Thus,

as of June 9, 2010, the date Masi's deposition was convened, Plaintiff lacked any good

faith basis to file an amended complaint adding the political hiring claim Plaintiff now

seeks to file.  Indeed, once formal discovery ensued on January 19, 2010 following

mediation, Defendant's responses, from January through May 2010, to Plaintiff's

discovery and deposition requests pertaining to the relevant questions in this action

regarding Defendant's procedures and policies for appointment or promotion to Laborer

II permanent positions may fairly be described as incomplete and unresponsive.

As noted, Masi's deposition was terminated after 3 ½ hours for two reasons.

First, Masi's self-expressed fear that further answers to Plaintiff's effort to obtain details

of the process used by the Mayor's office to hire persons to fill seasonal and permanent

Laborer II position in the Department may subject him to "self-incrimination" and

"retaliation," Plaintiff's Exh. M at 102-03, and because Masi had to leave for another

appointment.  Masi elaborated that he was also unwilling to answer Plaintiff's question

seeking Masi's awareness of "why the Mayor's office decides to appoint any particular

individual for employment in the streets department [*sic*] ?," *id*. at 106, because "[t]hey

approach <u>political</u> <u>issues</u> I do not want to be responsible for dealing with."  *Id.*

(underlining added).  After consulting with Quinn, Masi testified that "<u>not</u> <u>that</u> <u>all</u>

appointments are made based on a political format," *id.* at 108, and that he held an opinion that "there are individuals [in city government] who believe that it is a common method by [*sic*] making appointment." *Id.* at 209 (underlining and bracketed material added). Taken as a whole, a fair reading of Masi's testimony is that, as Defendant's Rule 30(b)(6) representative, at that time Masi had knowledge that in hiring persons for Laborer II positions the Mayor's office takes into account political considerations, and, further, that persons whose time and attendance records were not satisfactory were nonetheless hired at the behest of the Mayor's office supporting that other non-merit selection factors take precedence. *Id.* at 63.

Following Masi's deposition, the parties disputed whether because of Masi's reluctance to directly answer Plaintiff's questions regarding political influence in hiring seasonal and permanent Laborer II positions in the Public Works Department, the City's Corporation Counsel's office and Defendant's outside counsel, Hodgson Russ, which filed its notice of appearance on June 30, 2010, were disqualified from continued representation of Defendant. Gorczynski Affidavit ¶ ¶ 37-71. Plaintiff asserts his failure to move to amend the Scheduling Order and for leave to file an amended complaint immediately following the Masi deposition was based on his attorney's belief that the question of disqualification needed to be resolved before motions directed to these issues were filed. Gorczynski Affidavit ¶ 71. Whether it was necessary for Plaintiff to defer for nearly 90 days after Masi's deposition filing the instant motion because of ethical issues Plaintiff perceived as disqualifying Defendant's attorneys from further representation, and given the court's finding that Plaintiff lacked any good faith basis to seek to add the proposed First Amendment claim until the Masi deposition, the court

24

finds that even if all of such delay was unnecessary, no substantial prejudice to Defendant accrued as a result and a delay does not detract from Plaintiff's belated discovery of grounds for the amendment in early June 2009 as a result of its diligent pursuit of discovery from Defendant.   Moreover, attorneys are expected to bring what they genuinely believe are serious issues of disqualification arising during litigation to the tribunal's attention promptly for adjudication.   *Milone v. English*, 306 F.2d 814, 818 (D.C.Cir. 1962) ("Such a motion [to disqualify counsel] is of an equitable nature and should be made with promptness and reasonable diligence once the facts are known." (citing *Marco v. Dulles*, 169 F.Supp. 622, 632 (S.D.N.Y. 1959), *appeal dismissed*, 268 F.2d 192 (2d Cir. 1959), *overruled on other grounds*, 496 F.2d 800, 806 (2d Cir. 1974)). *See also Siverio v. Lavergne*, 1989 WL 31531, at *2 (S.D.N.Y. Mar. 29, 1989) ("A motion to disqualify [counsel] should be made within a reasonable time of discovering a possible conflict of interest, or a waiver will be presumed." (citing cases)).   Here, Plaintiff's counsel cannot be faulted for attempting to persuade Defendant's attorneys to withdraw voluntarily based on Plaintiff's disqualification arguments prior to filing the instant motion as a good-faith means to avoid judicial intervention.   Perhaps Plaintiff's attorneys should have concluded their effort was futile earlier, but the court declines to engage in such second-guessing of Plaintiff's tactical decisions in this regard.   The fact is that Defendant took no concerted discovery steps until after Plaintiff's motion was filed and so cannot demonstrate any serious prejudice as a result of Plaintiff's delay until August 27, 2010 in bringing the motion.

A fair reading of the Proposed Amended Complaint reveals that Plaintiff alleges he has satisfactorily performed in his seasonal Laborer II position for 10 years, he was

assured that promotion to a Laborer II permanent position was based on merit, but that younger less qualified politically connected individuals were given such positions, that despite obtaining a commercial vehicle license as recommended by his supervisors he was nevertheless passed over for appointment by persons who had provided, unlike Plaintiff, active political support to the present Mayor, that appointments and promotions to the permanent Laborer II positions were done on a merit system under the prior administration and that the Mayor's office now selects persons for such appointment on a political basis and who are younger than Plaintiff.  While these allegations do not, as Defendant argues, specify who within the Mayor's office is responsible for the improper hirings asserted by Plaintiff in the Proposed Amended Complaint, the allegations do, if proven, provide circumstantial evidence that it is plausible to believe such politically motivated hiring has occurred.

Defendant also contends that Plaintiff's First Amendment is futile as Plaintiff failed to allege he has fulfilled civil service qualifications for a truck driver position implying such allegations are a prerequisite to Plaintiff's proposed Third Claim for relief. Defendant's Memorandum at 14.  This argument misreads Plaintiff's allegations in the Proposed Amended Complaint describing Plaintiff's efforts, encouraged by Plaintiff's supervisors, to improve his prospects for promotion to a permanent Laborer II position by obtaining a commercial drivers license.  Plaintiff's Reply Exh. 5, Proposed Amended Complaint ¶¶ 26-27.  Fairly read, these allegations state only that despite Plaintiff's efforts to comply with these supervisory suggestions, as alleged, younger and politically-connected persons were nevertheless appointed or promoted to permanent truck driver positions despite being less-qualified than Plaintiff thus supporting Plaintiff's

claim that political preferences, not merit, predominate in Defendant's Mayor's office's selection process for permanent Laborer II positions, including permanent truck-driver positions within the Laborer II job category.  If such truck-driver positions require competitive civil service examination and eligible appointment lists, Defendant does not cite to any state or local civil service rules to support its contention.  Moreover, Defendant's contention is contrary to Defendant's answer to Plaintiff's First Set of Interrogatories Nos. 6-10, Plaintiff's Exh. F at 3, that Laborer II positions are within the state and Defendant's non-competitive civil service classification and are therefore not subject to posting.  Accordingly, the court finds that Defendant's futility contention based on this ground to be without merit.

Although Plaintiff's proposed First Amendment claim, if allowed, will add a new theory of liability, *i.e.*, whether Defendant's political preferences, in addition to Plaintiff's age, played an improper role in Plaintiff's inability to obtain a permanent Laborer II position, given that Masi, as Defendant's Rule 30(b)(6) representative, has testified that these decisions were in fact made not by the Department or other agencies of Defendant, but within the Mayor's office, the same witnesses who would provide evidence negating Plaintiff's ADEA claim should presumably also be in a position to testify in opposition to Plaintiff's new First Amendment claim.  Moreover, Defendant should not be surprised by Plaintiff's new claim given that although the Complaint presently alleges only an ADEA claim, Defendant's Answer's Second and Third Affirmative Defenses deny Defendant violated "Plaintiff's Constitutional rights." Plaintiff's Exh. D at 2.

Nor is there any merit to Defendant's contention that the Proposed Amended Complaint is futile because of its failure to allege civil rights liability against Defendant based on an official policy, practice or custom as required by *Monell v. Dep't. of Social Services*, 1436 U.S. 658 (1978).  Here, Plaintiff alleges, Proposed Amended Complaint ¶ 36, that it is the custom, policy or practice of the Mayor of Defendant, its chief executive officer, with general supervisory authority over the Department, to utilize political loyalties and preferences as reasons for hiring and promoting persons to Laborer II positions in the Department.  As such, Defendant's argument is no bar to Plaintiff's motion to amend.

Although Defendant relies on *Woodworth v. Erie Ins. Co.*, 2009 WL 3671930 (W.D.N.Y. Oct. 29, 2009) in opposing Plaintiff's request to amend, *Woodworth* is distinguishable.  In *Woodworth*, plaintiffs sought to file an amended complaint to add, to plaintiff's breach of home owner's insurance contract claim, a claim recently established by the New York Court of Appeals for extracontractual consequential damages including emotional distress, living expenses, and attorneys fees.  *Woodworth*, 2009 WL 3671930, *1.  Plaintiffs delayed filing such motion nearly 11 months after the Court of Appeal's holding, and discovery was scheduled to end a couple of days after plaintiff's motion.  *Id.*, *3.  Plaintiffs' request to amend was denied because plaintiffs' delay could not be excused and the proposed emotional distress claim would require substantial additional discovery prejudicial to defendant.  *Id.*, *1.  By contrast, in the instant case, other than holding an earlier pre-filing suspicion that Defendant improperly may have used Plaintiff's lack of political party affiliation as a Democrat and active support for the Mayor's political campaign as a reason to deny Plaintiff's promotion to a

permanent Laborer II position as such positions became available, until Masi's incomplete June 9, 2010 deposition, Plaintiff had no corroborative evidence from a representative of Defendant that such political considerations in fact were used by the Mayor's office in filling permanent Laborer II positions in the Department.  Plaintiff's assertion that Defendant's Streets Division supervisors suggested Plaintiff could improve his chances for promotion were made, in one case, in apparent off-duty circumstances and without specific attribution to the Mayor's office.  Thus, unlike the facts in *Woodworth,* Plaintiff's delay in seeking amendment was at most a period of approximately 90 days after the Masi deposition which recognized the possibility of political considerations and, as discussed, Discussion, *supra*, 24-25, at least a part of that period may be excused as caused by the unexpected disqualification issue, and Plaintiff's unsuccessful attempt to resolve it without filing the instant motion.  Accordingly, the unexcused and unexplained eleven-month delay in *Woodworth* is not sufficiently similar to the facts of the instant case to provide a reason to deny Plaintiff's request.

Based on these facts, Plaintiff acted diligently in conducting discovery calculated to produce, or not, grounds to support Plaintiff's proposed First Amendment political hiring claim.  Moreover, as Plaintiff's proposed amended complaint has a plausible basis it is not futile and Defendant has failed to demonstrate sufficient prejudice to deny Plaintiff's request if Plaintiff is allowed to add such claim at this time.  Accordingly, Plaintiff's request to serve and file the proposed Amended Complaint is GRANTED.

**B.      Motion to Disqualify**.

Motions to disqualify are within the sound discretion of the court. *All Stars and Vehicles, Inc. v. BFI Canada Income Fund, IESI, Corp.*, 2010 WL 2243351, *2 (E.D.N.Y. June 1, 2010) (citing *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990)).  Courts consider disqualification as a "'drastic measure,' requiring a careful balancing of competing interests." *Id.* (quoting *Reilly v. Computer Assoc. Long-Term Disability Plan*, 423 F.Supp.2d 5, 8 (E.D.N.Y 2006)).  Disqualification is typically found where an attorney's conflict causes the court to conclude that the "vigor" of the attorney's representation may be compromised or where possible misuse of confidential communication resulting in unfair advantage may result. *Board of Education v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979).  Pursuant to Local Rules of Civil Procedures, the court applies the Rules of Professional Conduct ("Code") ("Rule ___"), Local R.Civ.P. 83.3(a) (W.D.N.Y.) including related federal and New York state caselaw. *Id.*

Here, Plaintiff contends that through its joint representation of Masi and Defendant at Masi's Rule 30(b)(6) deposition, Quinn, and by imputation under Rule 1.10(a), the Defendant's Law Department, engaged in a violation of Rule 1.7 when, during the deposition, Masi announced his reluctance to answer Plaintiff's questions asking Masi to explain how appointments and promotions to Laborer II permanent positions in the Department were made.  Plaintiff's Exh. M at 102, 106, 107. Specifically, after disclosing that political considerations may well have been used by the Mayor's office in selecting and communicating its hiring preferences to the Department and citing possible "self-incrimination" and "retaliation," Masi balked at

providing further answers stating he was "not comfortable" answering Plaintiff's questions. *Id.* at 107. Following an off-the-record conference with Quinn, to which Plaintiff did not object, Masi continued to answer questions indicating that there is some basis to believe Laborer II hires are made by the Mayor's office for political reasons while denying having any personal knowledge of the procedures under in the Mayor's office. *Id.* at 109. Plaintiff asserts that by conferring with Masi and continuing to represent both Masi and Defendant during the remainder of the deposition, Quinn's representation violated Rule 1.7. As relevant, Rule 1.7(a)(1) prohibits representation where a reasonable lawyer would conclude that the representation "will involve the lawyer in representing differing interests."

By the same token, Plaintiff contends that when Hodgson Russ entered the case after the Masi deposition adjourned and Risman interviewed Masi to determine whether there existed any basis for Masi's assertion of potential self-incrimination and retaliation, concluding there were none and that no ground for disqualification existed, that a similar violation of Rule 1.7 occurred disqualifying Risman, and by imputation under Rule 1.10(a) (if one lawyer in a firm violates Rule 1.7 all lawyers in the firm suffer the same disqualification in further representation), Hodgson Russ. Plaintiff's contention also relies on Rule 1.13(a) which provides that where a lawyer represents an organization and the interests of the organization differ from those of an employee with whom the lawyer is dealing, the lawyer must advise the employee the lawyer represents the interests of the organization. Code Rule 1.12(a). The record does not reveal where either Quinn or Risman so advised Masi as the record indicates only that neither lawyer perceived any adverse interest between Masi and Defendant as result of Masi's

31

expression of fear of possible retaliation and self-incrimination, including potential adverse effects on Defendant, resulting from Masi's answers to Plaintiff's questioning during his deposition further relating to Defendant's hiring and promotion of Laborer II employees.

In the case of representation of a non-party witness and a party, disqualification under Rule 1.7(a) occurs where at the time the issue is presented the attorney engaged in simultaneous representation suffers from an actual conflict based on the witness's expected testimony adverse to an attorney's client such that the attorney's duty of loyalty and zealous representation to the client and witness is thereby impaired. *See In re Cendant Corporation Securities Litigation*, 124 F.Supp.2d 235, 242-43 (D.N.J. 2000) (citing ABA Formal Opinion 92-367 (1992)) (lawyer for party adverse to prospective trial witness disqualified from joint representation under Rule 1.7(a) and (b)).  Several risks sought to be avoided by Rule 1.7 arise where an attorney seeks to represent both a party and potential adverse witness including pitting the duty of loyalty to witness against the duty of loyalty to client, risk of breaching duty of confidentiality to witness, and preservation of lawyer's pecuniary interest in continued employment of either witness or party thereby impairing the lawyers capacity for independent judgment. *Id.* at 242.  *Compare All Star Carts and Vehicles, Inc.*, 2010 WL 2243351 (refusing disqualification of plaintiffs' class attorney based on attorney's representation of non-party fact witness where record demonstrated that basis for disqualification – witness's potential anti-trust liability to plaintiffs –  was speculative).

Masi's expressed fear of potential retaliation and self-incrimination resulting from answering directly Plaintiff's questions when raised was sufficiently real to Masi to

prompt Quinn to request an off-the-record conference with Masi to discuss Masi's ability to provide further testimony.  The record, of course, does not reveal what Masi disclosed to Quinn nor Quinn's advice to Masi, including a suggestion that Masi consult independent counsel or his assertion of the self-incrimination privilege, but it does reveal that Masi's answers after the conference were noticeably less specific and more measured than before, for instance, asserting an opinion as to other persons' beliefs about political considerations in Defendant's Laborer II hiring process are a common practice as opposed to Masi's personal knowledge.  Moreover, before Plaintiff's motion was filed, Masi retired from Defendant's employment.  It is therefore entirely possible that Masi genuinely feared retaliation if he were to have testified truthfully and, given that in his sworn answers to Plaintiff's interrogatories Masi proffered a lack of actual knowledge with regard to any of the considerations used by the Mayor's office, any further conflicting testimony could have reasonably raised worries over potential repercussions based on such conflicting statements.  Moreover, laymen engaged in municipal service with basic awareness of constitutional protections against termination or refusal to hire non-policy making personnel on political grounds could fear liability for having knowledge of such practices and facilitating their implementation thus further explaining Masi's reluctance to provide more specific answers to Plaintiff's questions. Nevertheless, although these possibilities may well exist rendering Plaintiff's disqualification motion at least colorable, a party seeking disqualification is required to meet a "high standard of proof," *Papyrus Tech. Corp. v. N.Y. Stock Exch., Inc.*, 325 F.Supp.2d 270, 276 (S.D.N.Y. 2004) (quoting *Evans v. Artek Systems Corp.*, 715 F.2d 788, 791 (2d Cir. 1983)).  "'Mere speculation will not suffice.'"  *All Star Carts and*

*Vehicles, Inc.*, 2010 WL 2243351, *4 (quoting *Paretti v. Cavalier Label Co.*, 722

F.Supp. 985, 987 (S.D.N.Y. 1989)).  Here, whether Masi in fact had reason to fear

retaliation or potential exposure to criminal charges is, on this record, ambiguous and

Masi's subsequent retirement has removed any immediate basis upon which to fear

potential retaliation should his further testimony be damaging to Defendant.

Accordingly, the court finds the record fails to establish that Masi's interests in giving

testimony are sufficiently adverse to Defendant to warrant disqualification of

Defendant's counsel at this time.  Plaintiff's motion seeking such disqualification is

therefore DENIED without prejudice.[3]


**C.     Plaintiff's Request for Additional Deposition Time.**

Defendant also opposes Plaintiff's request for an additional seven-hour period

beyond the seven-hour limit under Fed.R.Civ.P. 30(d)(1), Defendant's Memorandum at

15, within which to complete Masi's deposition.  Plaintiff's Memorandum at 10-11.

Specifically, Plaintiff states that even without Plaintiff's proposed First Amendment

political hiring claim, Plaintiff will need more than the remaining 3.5 hours to effectively

cover four substantive fact issues relating to Plaintiff's ADEA claim and to review with

Masi an unspecified number of documents recently produced by Defendant in order to

provide details needed to direct supplemental discovery requests to Defendant.  *Id.* at

11.

---

[3]  Regardless of Masi's present status as a deposition witness, it may be prudent to advise Masi of his right to consult independent counsel regarding any intention he may have to continue to raise the privilege against self-incrimination in any further deposition in this matter.

Fed.R.Civ.P. 33(d)(1) states that the court is required to permit additional time beyond the seven hour limit the rule contemplates if required to enable the fair conduct of the deposition or if a deponent hinders the deposition unless such additional time would be cumulative or unreasonably burdensome.  Defendant does not contend that the remaining subject areas to be covered in Masi's deposition would be cumulative or burdensome or even irrelevant.  Moreover, as the court has granted Plaintiff's request to add Plaintiff's proposed political hiring claim based on the First Amendment, some additional time should be anticipated to allow Plaintiff to fairly cover this subject as well. Given the limited nature of Masi's testimony on this issue at the June 9, 2010 deposition, and his prior assertions of lacking personal knowledge on the issue, it is questionable whether Masi will have much additional testimony to provide.  However, to avoid unduly restricting Plaintiff in covering the remaining issues and newly produced documents, the court finds that allowing an additional 3 ½ hours for a total seven hours within which to complete Masi's deposition under the circumstances is reasonable. Plaintiff is encouraged to consider providing Masi with copies of documents upon which Plaintiff requires in advance of the rescheduled deposition to expedite its completion. Plaintiff's motion for additional time to complete Masi's deposition is GRANTED.

**D.      Amendment of the Scheduling Order.**

Finally, Plaintiff also requests modification of the Amended Scheduling Order under which discovery was to be completed by December 31, 2010 (Doc. No. 16, ¶ 5). The parties agree modification is warranted.  Gorczysnki Affidavit ¶¶ 41, 43; Plaintiff's Exh. Q (Letter from Adam W. Perry, Esq. to Dean M. Drew, Esq. dated June 16, 2010

agreeing that an amended scheduling order may be necessary).  Plaintiff's motion to

amend the Scheduling Order is therefore GRANTED.  Accordingly, the parties shall,

within 10 days of this Decision and Order, pursuant to Fed.R.Civ.P. 26(f) submit a

proposed Second Amended Scheduling Order for the court's consideration; if the

parties are unable to agree, the parties shall timely submit individual proposed orders.

A hearing on such jointly proposed or individual proposals will be conducted at the

court's discretion.


## CONCLUSION

Based on the foregoing, Plaintiff's motion is GRANTED in part, and DENIED in

part.  Plaintiff shall serve and file the Amended Complaint within 10 days of this

Decision and Order

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated: March 31, 2011
       Buffalo, New York